# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| COREY TAYLOR, et al., | ) | 1:10cv01138 OWW DLB |
| | ) | |
| | ) | ORDER REQUIRING PLAINTIFFS TO EITHER FILE AMENDED COMPLAINT OR NOTIFY COURT OF WILLINGNESS TO PROCEED ONLY ON CLAIMS FOUND TO BE COGNIZABLE |
| Plaintiffs, | ) | |
| v. | ) | |
| WALMART, INC., | ) | (Doc. 1) |
| | ) | |
| | ) | RESPONSE DUE WITHIN THIRTY DAYS |
| Defendant. | ) | |

Plaintiffs Corey Taylor and Jostasha Taylor ("Plaintiffs"), appearing pro se and proceeding in forma pauperis, filed the instant action on June 24, 2010. Plaintiffs name Walmart, Inc. as Defendant.

## DISCUSSION

A.  Screening Standard

Pursuant to 28 U.S.C. § 1915(e)(2), the Court must conduct an initial review of the complaint for sufficiency to state a claim. The Court must dismiss a complaint or portion thereof if the Court determines that the action is legally "frivolous or malicious," fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2). If the Court determines that the complaint fails to state a claim, leave to amend may be granted to the extent that the deficiencies of the complaint can be cured by amendment.

B.   <u>Failure to State a Claim</u>

A complaint, or portion thereof, should only be dismissed for failure to state a claim upon which relief may be granted if it appears beyond doubt that plaintiff can prove no set of facts in support of the claim or claims that would entitle him to relief.  See <u>Hishon v. King & Spalding, 467 U.S. 69, 73 (1984)</u>, citing <u>Conley v. Gibson, 355 U.S. 41, 45-46 (1957)</u>; see also <u>Palmer v. Roosevelt Lake Log Owners Ass'n, 651 F.2d 1289, 1294 (9th Cir. 1981)</u>.  In reviewing a complaint under this standard, the court must accept as true the allegations of the complaint in question, <u>Hospital Bldg. Co. v. Rex Hospital Trustees, 425 U.S. 738, 740 (1976)</u>, construe the pleading in the light most favorable to the plaintiff, and resolve all doubts in the plaintiff's favor. <u>Jenkins v. McKeithen, 395 U.S. 411, 421 (1969)</u>.

C.   <u>Federal Rule of Civil Procedure 8</u>

<u>Fed. R. Civ. P. 8(a)</u> provides:

> A pleading that states a claim for relief must contain: (1) a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support; (2) a short and plain statement of the claim showing that the pleader is entitled to relief: and (3) a demand for the relief sought, which may include relief in the alternative or different types of relief.

A complaint must contain a short and plain statement as required by <u>Fed. R. Civ. P. 8(a)(2)</u>.  Although the Federal Rules adopt a flexible pleading policy, a complaint must give fair notice and state the elements of the claim plainly and succinctly.  <u>Jones v. Community Redev. Agency, 733 F.2d 646, 649 (9th Cir. 1984)</u>.  Plaintiffs must allege with at least some degree of particularity overt acts which the Defendant engaged in that support Plaintiffs' claim.  <u>Id.</u> Although a complaint need not outline all elements of a claim, it must be possible to infer from the allegations that all elements exist and that there is entitlement to relief under some viable legal theory.  <u>Walker v. South Cent. Bell Telephone Co., 904 F.2d 275, 277 (5th Cir. 1990)</u>; <u>Lewis v. ACB Business Service, Inc., 135 F.3d 389, 405-06 (6th Cir. 1998)</u>.

D.   <u>Summary of Plaintiffs' Allegations</u>

Plaintiffs allege that on March 2, 2010, they purchased tires at a Walmart in Odessa, Texas.  "[D]efendants" claimed that the tires were compatible for Plaintiffs' 2002 Pontiac Grand

1  Prix.  Plaintiffs paid for the tires, along with a disposal fee, but defendant intentionally installed
2  cheaper tires, which were "dangerously" incompatible for Plaintiffs' compact car and were made
3  for a SUV-style vehicle.  Plaintiffs allege that "defendants" also attempted to "extort extra
4  money" by charging $10.00 per tire for balancing.  Plaintiffs refused "her advances."  The
5  "defendant" then lied and said "she" gave Plaintiffs a free balance.

6  Plaintiffs allege that "defendants" were aware of the fact that Plaintiff Jotasha Taylor was
7  in late term pregnancy and the installed tires were fatally incompatible with their family car.
8  "She also knew" that they were traveling interstate.  Plaintiffs further allege that the "she"
9  attempted to hide the store's license number, typing "God Bless America" in that section, which
10 was not a common practice for white customers.  The defendant's last words were "have a
11 bumpy ride."

12 Plaintiffs allege that they were forced drive through the night from Odessa, Texas to
13 Shreveport, Louisiana.  The ride allegedly was "brutal" for 7 months pregnant Mrs. Taylor.
14 Plaintiffs then took their vehicle to Walmart #0448 in Shreveport, Louisiana.  The "defendants"
15 stated that it "was obvious" that a free balancing had not been performed and that it is not a
16 Walmart policy to charge an extra $40 for tire balancing after the purchase of 4 new tires.  They
17 were given a free balancing.

18 Thereafter, Plaintiffs allege that they left for their home in Fresno, California.  All the
19 Walmart stores were closed.  During the trip, the bumping multiplied at an alarming rate.
20 Plaintiffs allegedly experienced a "life threatening" blow out of the driver side tire.  Mr. Taylor
21 had to change the tire on a dark highway.  Plaintiffs allege that they had no choice but to finish
22 the trip on 3 defective tires and 1 donut tire, a drive of over 1,000 miles.

23 Plaintiffs allege that they arrived at Walmart Kings Canyon, Fresno.  Plaintiffs expressed
24 to "defendants" the tire problem and its severity.  After a short investigation, defendant allegedly
25 stated "Oh my God!  These are definitely the wrong tires!", "They definitely manipulated you
26 guys," and "This is a major safety issue."  Plaintiffs also allege that "she" made calls to
27 neighboring Walmarts to see if they had the correct brand in stock.  Plaintiffs were told that it
28 was not against store policy to ask another tire store, but it needed supervisor approval.

Plaintiffs allege that they waited two hours for Susan, a manager representing defendant, to arrive. After reading the contract, Plaintiffs allege that Susan immediately lied and said defendant was not liable for new tires. When Mrs. Taylor pointed out the clause on the back, Susan allegedly "violently ripped the receipt" from Plaintiffs' hands and screamed for them to "Go sit down!" Mrs. Taylor allegedly pleaded for the more sympathetic associate to help put the receipt back together. Plaintiffs allege that this harsh treatment was not given to white customers.

Plaintiffs allegedly informed Susan that they knew they were entitled to help from Defendant Walmart Inc. to get the tires that they paid for. Plaintiffs allege that Susan and another employee verbally attacked Mrs. Taylor and refused to allow Plaintiffs "to view policies." Susan reportedly yelled that she did not have to serve them and all she had to do was refuse service. Plaintiffs allege that defendant denied service and they faced public humiliation. Plaintiffs also allege that defendant treated their "family of African Amercians extremely and significantly less than whites were treated at the public accommodation." Plaintiffs further allege that "defendants" intentionally inflicted emotional harm on them in front of other customers and employees.

Plaintiffs allege that when they asked to speak with a "higher up manager," Susan lied and said she had the most authority and no other manager would be there until the next day. Plaintiffs allege that they called the Odessa location, but the manager there reportedly said it was out of his hands and Robert Craigo had the duty of care to resolve the issue. The manager refused to speak to Mr. Craigo. Plaintiffs further allege that after 4 hours, Mr. Craigo, the store manager, came out of his office. Plaintiffs assert that Mr. Craigo tried to deceive them into thinking that Defendant Walmart Inc. had "zero liability." Plaintiffs reportedly informed him that he was obligated by contract. Plaintiffs allege that he inspected the tires and then phoned the clerk that did the work, who allegedly stated, "It wasn't a mix-up, it was intentional." Mr. Craigo allegedly responded "Next time cover yourself and make them sign a disclaimer." He then told Plaintiffs that he could get the right tire, but just didn't want to. He offered to take the tires back for a full refund, leaving Plaintiffs with a tireless car. Plaintiffs allege that this was reckless and

unreasonable.  Mr. Craigo allegedly invited Plaintiffs to do the work themselves and refused to work if he or his white staff members had to do the work for Plaintiffs.  Plaintiffs allege that it is very evident they are a black family.

Plaintiffs also allege that Mr. Craigo intimidated them by threatening forceful removal of their car.  After Plaintiffs removed their vehicle, they asked an employee to provide the last name of the store manager.  The employee allegedly responded, "I don't know.  And if I did I wouldn't tell your black ass."  Plaintiffs allege that they again approached Mr. Craigo, asking for a higher official to help them get their tires.  Mr. Craigo reportedly gave them a telephone number that turned out to be a leasing company.  Plaintiffs allege that they were forced to leave Walmart with the same tires.

Plaintiffs assert causes of action for violation of their civil rights and racial discrimination.  Plaintiffs also assert causes of action for intentional endangerment of a fetus, unlawful intimidation by use of force, violation of interstate commerce rights, fraud, extortion, assault and intentional infliction of emotional distress.  Plaintiffs seek general and punitive damages, along with the costs of tire service and court costs in a total amount of $111,000,349.00.

E.     Analysis

*Racial Discrimination*

In this case, Plaintiffs allege that Defendant Walmart Inc. racially discriminated against them in violation of their civil rights.  Plaintiffs do not identify a statutory basis for this claim.  However, Title 42 of the United States Code, section 1981(a) provides:

> [a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pain, penalties, taxes, licenses, and exactions of every kind, and to no other.

To establish a claim under 42 U.S.C. section 1981, a plaintiff must show that: (1) he or she is a member of a racial minority; (2) defendant had an intent to discriminate on the basis of race; and (3) the discrimination concerned one or more of the activities enumerated in the statute

(i.e., the making and enforcing of a contract). Morris v. Office Max, Inc., 89 F.3d 411, 413 (7th Cir.1996) (citing Green v. State Bar of Texas, 27 F.3d 1083, 1086 (5th Cir.1994); Mian v. Donaldson, Lifkin & Jenrette Securities Corp., 7 F.3d 1085, 1087 (2d Cir.1993)).

Although Plaintiffs' complaint does not expressly identify 42 U.S.C. § 1981 as the legal basis for their claim of racial discrimination, Plaintiffs have stated a cognizable claim under section 1981.

*Unlawful Intimidation by Use of Force*

Plaintiffs have alleged unlawful intimidation by use of force, but have not identified an underlying statutory or legal basis for this claim. California's Bane Act provides in relevant part that:

> Whenever a person or persons, whether or not acting under color of law, interferes by threats, intimidation, or coercion, or attempts to interfere by threats, intimidation, or coercion, with the exercise or enjoyment by any individual or individuals of rights secured by the Constitution or laws of the United States, or of the rights secured by the Constitution or laws of this state, the Attorney General, or any district attorney or city attorney may bring a civil action for injunctive and other appropriate equitable relief in the name of the people of the State of California, in order to protect the peaceable exercise or enjoyment of the right or rights secured.

Cal.Civ.Code § 52.1(a). The Bane Act further provides that any person subjected to the above-described conduct may bring a civil action on his or her own behalf. Cal.Civ.Code § 52.1(b).

Plaintiffs' complaint appears to state a cognizable claim.

*Fraud*

To determine if the elements of fraud have been pleaded to state a claim for relief, district courts look to state law. Kearns v. Ford Motor Co., 567 F.3d 1120, 1126 (9th. Cir.2009) (citations omitted). In California, the elements of a cause of action for fraud are: "(a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or 'scienter'); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage." Engalla v. Permanente Med. Group, Inc., 15 Cal.4th 951, 974 (1997) (internal quotation marks omitted). "'[W]hile a federal court will examine state law to determine whether the elements of fraud have been pled sufficiently to state a cause of action, the Rule 9(b)

requirement that the circumstances of the fraud must be stated with particularity is a federally imposed rule.'" Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1102 (9th Cir.2003) (citation omitted, emphasis omitted, brackets in original).

Plaintiffs complaint alleges the elements of fraud.

*Extortion*

Courts have relied on the definition and elements of the criminal code to analyze a civil extortion claim. See Monex Deposit Co. v. Gilliam, 2009 WL 2870642, at *1 (C.D.Cal.2009) (relying on California Penal Code section 518 to define civil extortion as "the obtaining of property from another, with his consent ... induced by a wrongful use of force or fear ..."). California has recognized a claim of "civil extortion" for the recovery of money obtained by the wrongful threat of criminal or civil prosecution. See Fuhrman v. Cal. Satellite Sys., Inc., 179 Cal.App.3d 408, 426, 231 Cal.Rptr. 113 (1986). The Court construes the claim as one for civil extortion. However, the complaint does not adequately allege that Defendant obtained property or money from Plaintiffs with their consent, at least in part induced by wrongful use of fear, or that Defendant threatened criminal or civil prosecution. To the extent they can cure this deficiency, Plaintiffs will be given leave to amend this cause of action.

*Assault*

An assault is a demonstration of an unlawful intent by one person to inflict immediate injury on the person of another then present. Lowry v. Standard Oil Co. of California, 63 Cal.App.2d 1, 6-7, 146 P.2d 57 (1944). The tort of assault is complete when the anticipation of harm occurs. Kiseskey v. Carpenters' Trust for Southern California, 144 Cal.App.3d 222, 232, 192 Cal.Rptr. 492 (1983).

Plaintiffs do not allege that defendant (or individuals) intended to inflict immediate injury on them and that they anticipated harm. Plaintiffs fail to plead facts that the behavior of one or more of the individuals lead to Plaintiffs' fear of imminent bodily harm. Having failed to allege the requisite elements of an assault claim, Plaintiffs are granted leave to amend this cause of action to the extent that they are able to do so.

*Intentional infliction of emotional distress*

"Under California law, to make out a cause of action for intentional infliction of emotional distress, a plaintiff must show, in relevant part, that the defendant engaged in extreme and outrageous conduct that exceeded the bounds of what is generally tolerated in a civilized society." Braunling v. Countrywide Home Loans Inc., 220 F.3d 1154, 1158 (9th Cir. 2000) (citation omitted). Mere rudeness and insensitivity do not rise to the level required for a showing of intentional infliction of emotional distress. Id.

Plaintiffs' complaint appears to state a cognizable claim for intentional infliction of emotional distress.

*Violation of Interstate Commerce Rights* and *Intentional Endangerment of a Fetus*

There do not appear to be separate claims under such labels. In other words, there is no indication that there are such claims or that Plaintiffs may maintain such actions under federal, state or common law. To the extent that Plaintiffs disagree, they will be given an opportunity to amend their complaint to state a cognizable claim.

F.     Amended Complaint

If Plaintiffs do not wish to file an amended complaint and are agreeable to proceeding on their claims of racial discrimination in violation of 42 U.S.C. § 1981, unlawful intimidation by use of force, fraud, and intentional infliction of emotional distress, Plaintiffs may notify the Court in writing, and the Court will issue Findings and Recommendations recommending that the remaining claims be dismissed from this action, and will forward Plaintiffs a summons and USM-285 form for completion and return. Upon receipt of the forms, the Court will direct the United States Marshal to initiate service of process.

If Plaintiffs opt to amend, they are informed that the Court cannot refer to a prior pleading in order to make the amended complaint complete. Local Rule 220 requires that an amended complaint be complete in itself without reference to any prior pleading. This is because, as a general rule, an amended complaint supercedes the original complaint. See Loux v. Rhay, 375

F.2d 55, 57 (9th Cir. 1967). Once Plaintiffs file an amended complaint, the original pleading no longer serves any function in the case.

Based on the foregoing, it is HEREBY ORDERED that:

1. Within **thirty (30) days** from the date of service of this order, Plaintiffs must either:

   a. File an amended complaint curing the deficiencies identified by the Court in this order, or

   b. Notify the Court in writing that they do not wish to file an amended complaint and wish to proceed only on their cognizable claims; and

2. If Plaintiffs fail to comply with this order, this action will be dismissed for failure to obey a court order.

IT IS SO ORDERED.

Dated:   **July 28, 2010**                          **/s/ Dennis L. Beck**
                                                 UNITED STATES MAGISTRATE JUDGE