1
2
3
4
5
6
7
8
9           UNITED STATES DISTRICT COURT

10          EASTERN DISTRICT OF CALIFORNIA

11

12  | COREY TAYLOR, *et al.*, | 1:10-CV-01138-OWW-DLB |
13  | | |

**COREY TAYLOR, *et al.*,**                  **1:10-CV-01138-OWW-DLB**

                                            **MEMORANDUM DECISION AND ORDER**
                    **Plaintiffs,**          **RE: PLAINTIFFS' MOTION FOR**
                                            **SUMMARY JUDGMENT (Doc. 25)**

        **v.**

**WAL-MART INC.,**

                    **Defendant.**

20                    **I.    INTRODUCTION.**

21      Before the Court for decision is Plaintiffs Jotasha and Corey
22  Taylor's motion for summary judgment, filed on November 12, 2010.
23  Plaintiffs, proceeding pro se and in forma pauperis, previously
24  prematurely moved for summary judgment on July 6, 2010, two weeks
25  after they filed this federal litigation.   That motion was denied
26  on September 9, 2010.

27      Defendant Wal-Mart Inc. ("Defendant" or "Wal-Mart") opposed
28  the present motion on January 31, 2011.

                                    **1**

1       **FACTUAL AND PROCEDURAL BACKGROUND.**

2       **This case includes allegations of racial discrimination and**

3  **commercial fraud related to Plaintiffs' purchase of four automobile**

4  **tires at a Wal-Mart store in Odessa, Texas.  According to**

5  **Plaintiffs, the tires were defective and/or unsuitable for their**

6  **cross-country drive to California;  that various Wal-Mart employees**

7  **- in Texas, Louisiana and California - purposefully and with racial**

8  **animus installed defective tires and subsequently refused to**

9  **reinstall the appropriately sized tires Plaintiffs intended to**

10 **purchase, resulting in "substantial" damage and emotional distress.**

11 **Plaintiffs further allege that they were subjected to violence**

12 **and/or threats of violence at a Wal-Mart store in Fresno,**

13 **California.**

14      **Although the parties dispute many of the relevant facts**

15 **concerning this motion, this is a general summary:[1]**

16

17 **A.   Odessa, Texas**

18      **Plaintiffs allege that on March 2, 2010 they purchased four**

19 **tires at a Wal-Mart in Odessa, Texas.  According to Plaintiffs, a**

20 **Wal-Mart employee claimed that the tires were compatible for**

21 **Plaintiffs' 2002 Pontiac Grand Prix.  Plaintiffs claim that they**

22 **paid for the tires, along with a disposal fee, but Defendant**

23 **intentionally installed cheaper tires, which were "dangerously"**

24 **incompatible for Plaintiffs' sedan.  Plaintiffs allege that Wal-**

25

26        [1] Plaintiffs' motion does not include a factual or procedural
background, a violation of E.D. Local Rule 56-260(a).  The relevant
27 facts are taken from the operative complaint, Defendant's
opposition to the Rule 56 motion and other Orders/Memorandum
28 Decisions on file in this case.

Mart also attempted to extort extra money by charging $10.00 per tire for balancing the tires.

Plaintiffs further allege that Defendant was aware that Plaintiff Jotasha Taylor was in late term pregnancy and Plaintiffs were traveling interstate; a Wal-Mart employee attempted to conceal store's license number and incorrectly told Plaintiffs that they were given a free tire balance; and the same employee told Plaintiffs to "have a bumpy ride."

Defendant disputes Plaintiffs' version of events.  According to the declaration of Leonardo Vargas, a Wal-Mart tire technician working on March 2, 2010, Plaintiffs arrived at the Wal-Mart store shortly before closing and requested the most inexpensive tires for their drive to California.  Plaintiffs were given the appropriately sized tires - P225/60R16 -, however, Mr. Vargas inadvertently scanned the wrong serial number into the computer system, which resulted in Plaintiffs receiving Douglas tires instead of the Goodyear Viva 2 tires they were recommended to purchase.  Plaintiffs' service order reflected this error.  Mr. Vargas states that Plaintiffs declined the tire balancing ($10 per tire), but the service was provided free of charge "in light of plaintiffs' upcoming lengthy trip to California [] and their limited funds."  Mr. Vargas did not mention the free tire balancing on Plaintiffs' service order.

Mr. Vargas contends that he did not intentionally install Douglas tires nor did he intentionally give Plaintiffs S-rated

tires when H-rated tires were recommended for their vehicle.[2] According to Mr. Vargas, he did not attempt to conceal the store number or consider Plaintiffs' race during their interactions.

## B.   Shreveport, Louisiana

According to the Complaint, Plaintiffs drove from Odessa, Texas to Shreveport, Louisiana on the night of March 2, 2010. Plaintiffs arrived at Wal-Mart #0448 in Shreveport, Louisiana on March 3, 2010. According to Plaintiffs, a Wal-Mart tire technician in Shreveport inspected the car and said it "was obvious" that a free balancing was not performed and that it was not a store policy to charge for tire balancing after the purchase of new tires.

Defendant responds that Plaintiffs arrived in Shreveport on March 3, 2010 and spoke with Wal-Mart tire technician James Johnson concerning a tire malfunction. Mr. Johnson reviewed the service order and discovered Mr. Vargas' original invoicing error, i.e., that Plaintiffs purchased Goodyear Viva 2 tires but in fact were sold Douglas tires. Mr. Johnson also noted that the service order did not indicate that Plaintiffs' tires had been balanced. Mr. Johnson conveyed this information to Plaintiffs, who then requested that Viva tires be installed on their automobile. Mr. Johnson informed Plaintiffs that there were no Viva tires in stock or available in the Shreveport area.

As no Viva tires were available in the Shreveport area, Mr. Johnson and the shop manager Francine Scott balanced the tires and

---

[2] The distinction between H-rated and S-rated tires and its relevance to this case is discussed *supra*.

**4**

prepared an updated service order.  The Wal-Mart employees represent that since the tires were appropriately sized;  there was no risk of malfunction or "blowout."  Mr. Johnson and Ms. Scott claim that they told Plaintiffs to present their service order at any other Wal-Mart to obtain the Viva tires they ordered the previous day.

Mr. Johnson and Ms. Scott represent that they did not consider Plaintiffs' race during their interactions and did not did not treat Plaintiffs different from customers of other races.

C.   <u>Fresno, California</u>

According to the complaint, Plaintiffs departed Shreveport for Fresno, California on March 3, 2010.  During the drive to Fresno Plaintiffs allegedly experienced a "life threatening" blowout of the driver side tire.  Plaintiffs allege that they had no choice but to finish the trip on three defective tires and one "donut" tire, a drive of over 1,000 miles.

Plaintiffs arrived at Wal-Mart Kings Canyon, Fresno, on an undisclosed date, and apprised a Wal-Mart employee of their tire problems.  The employee allegedly inspected the tires and stated "Oh my God! These are definitely the wrong tires!" and "[t]hey definitely manipulated you guys."  The employee then inquired with nearby Wal-Mart stores to see if they had the correct brand (Viva tires) in stock.  Plaintiffs were allegedly told that it was not against store policy to ask another tire store, but it needed supervisor approval.

Plaintiffs allege that they waited two hours for Susan, a Wal--Mart surpervisor, to arrive.  After reading the "tire contract,"

**5**

Plaintiffs allege that Susan immediately lied and said Wal-Mart "was not liable for new tires." According to Plaintiffs, Susan then "violently ripped the receipt" from Plaintiffs' hands. Ms. Taylor allegedly pleaded for assistance to put the receipt back together. Plaintiffs reiterated that they were entitled to the Viva tires they paid for, at which time Susan allegedly verbally attacked them and refused to conduct business with them.

Plaintiffs further allege that when they asked to speak with a "higher up manager," Susan lied and said she had the most authority and no other manager would be there until the next day. Plaintiffs allege that they called the Odessa Wal-Mart, but the manager there reportedly said it was out of his hands and they should speak to the Fresno Wal-Mart store manager, Mr. Robert Craigo. Plaintiffs claim that after 4 hours, Mr. Craigo came out of his office and tried to deceive them into thinking that Defendant had "zero liability." Plaintiffs allege that Mr. Craigo inspected the tires and then phoned the clerk that did the work, who allegedly stated, "It wasn't a mix-up, it was intentional." Mr. Craigo allegedly responded "Next time cover yourself and make them sign a disclaimer." He then told Plaintiffs that he could get the right tire, but just didn't want to. He offered to take the tires back for a full refund, leaving Plaintiffs with a tireless car. Mr. Craigo allegedly invited Plaintiffs to do the work themselves and refused to work if he or his white staff members had to do the work for Plaintiffs.

Plaintiffs also allege that Mr. Craigo intimidated them by threatening forceful removal of their car. After Plaintiffs removed their vehicle, they asked an employee to provide the last

name of the store manager.  The employee allegedly responded, "I don't know. And if I did I wouldn't tell your black ass." Plaintiffs allege that they again approached Mr. Craigo, asking for a higher official to help them get their tires.  Mr. Craigo reportedly gave them a telephone number to a leasing company. Plaintiffs allege that they were forced to leave Walmart with the same tires.

Defendant disputes Plaintiffs' version of events.  According to Defendant, Plaintiffs arrived at the Fresno Wal-Mart claiming that one of their tires blew out during a cross-country drive. Plaintiffs produced the service order, however, no spare tire was observed on Plaintiffs' automobile.   Wal-Mart employee Lauren Holguin reviewed the transaction history and discovered that the recommended tires for Plaintiffs' 2002 Grand Prix were the "H" Series;  however, Plaintiffs actually requested the Viva tires, which are "S" series.  The difference between the "H" and "S" rated tires is speed.  Tires with a speed rating of "H" are recommended for driving at speeds of up to 130 mph.  Tires with a speed rating of "S" are recommended for driving at speeds of up to 112 mph. Defendants argue that "as long as plaintiffs' speed stayed below 112 miles per hour, plaintiffs should not have had any problems with the Douglas tires ["S" speed rating] they received."

Ms. Holguin explained the speed rating distinction to Plaintiffs and called other area stores for appropriately-sized "H" rated tires.  No stores had the tires in stock and Plaintiffs were given the option of ordering the tires, arriving in one week. Plaintiffs asked whether they could purchase tires from another store.  As Ms. Holguin was not authorized to approve such a

7

transaction, she referred the matter to Assistant Manager Susan Vargas.  Ms. Vargas states that as soon as she arrived on the scene, Plaintiff Jotasha Taylor "become confrontational." Eventually, Ms. Vargas called Store Manager Robert Craigo to assist.

According to Defendants, Robert Craigo contacted the Odessa Wal-Mart and spoke with an associate in the tire department familiar with Plaintiffs.  After speaking with the Odessa associate, Mr. Craigo explained to Plaintiffs the tire ratings and that "H" rated tires could be installed in one week.  Plaintiffs responded that they wanted to purchase tires from a different tire retailer.  Mr. Craigo explained that they could do so, but they would have to eventually return the Douglas tires to receive a full refund.  Plaintiffs rejected this option and left the store without having ordered the "H" rated tires.

At an unknown point during the conversation, Plaintiff Jotasha Taylor called Jose Salinas, the Assistant Manager at the Odessa Wal-Mart, to request a full refund.  Mr. Salinas referred the matter to the Wal-Mart Regional Manager in charge of the Fresno area, Mickey Anderson.  It is unclear Plaintiffs contacted Mr. Anderson concerning their tire purchase.

Ms. Holguin and Mr. Vargas state that they did not tear Plaintiffs' receipt; did not commit any acts of violence or threaten any acts of violence;  did not consider Plaintiffs' race during their interactions; and did not did not treat Plaintiffs different from customers of other races.

D.   **Release of Liability Signed by Plaintiffs**

**8**

1    According to Defendant, after several discussions with Wal-
2   Mart's insurer, Plaintiffs accepted a property damage settlement in
3   the amount of $320.00 in June 2010.  Specifically, on June 21,
4   2010, Andrew Berger, a claims adjuster for Wal-Mart's insurer, sent
5   Plaintiffs a release and settlement agreement concerning
6   Plaintiffs' property damage claim.  Included with the release was
7   a settlement draft for $320.00.

8    On June 29, 2010, Plaintiff Corey Taylor endorsed the
9   settlement draft and cashed the check, without signing or returning
10  the enclosed release.

11

12  **E.    Plaintiffs' Federal Complaint and Rule 56 Motion**

13   On June 24, 2010, Plaintiffs filed a proposed complaint and a
14  motion to proceed in forma pauperis.

15   On August 3, 2010, the Court screened Plaintiffs' Complaint
16  and found that they had stated claims for: (1) a violation of 42
17  U.S.C. § 1981; (2) unlawful intimidation by use of force; (3)
18  fraud; and (4) intentional infliction of emotional distress.

19   On November 12, 2010, Plaintiffs moved for summary judgment on
20  each claim advanced in the complaint.

21   Defendant opposed the motion on January 31, 2011.  In support
22  of its opposition, Wal-Mart submitted: (1) a Memorandum supporting
23  its opposition; (2) the declaration of Jose Salinas, Odessa Wal-
24  Mart Assistant Manager; (3) the declaration of Leonardo Vargas,
25  Odessa Wal-Mart tire technician; (4) the declaration of Andrew
26  Berger, a claims adjuster for Wal-Mart's insurer; (5) the
27  declaration of Roberto Craigo, Fresno Wal-Mart Store Manager; (6)
28  the declaration of Lauren Holguin, Fresno Wal-Mart Sales Associate

(Tire Department);   (7) the declaration of Susan Vargas, Fresno Wal-Mart Assistant Manager; (8) the declaration of Francine Scott, Shreveport Wal-Mart Shop Manager; and (9) the declaration of James Johnson, Shreveport Wal-Mart tire technician.   (Docs. 29-36.)

These declarations describe Plaintiffs' conduct and the tire installation/rotation services provided to Plaintiffs at the Odessa, Shreveport and Fresno Wal-Mart stores during the relevant time-frame.   The declarations also represent that Wal-Mart employees did not consider Plaintiffs' race during their interactions with Plaintiffs;  and did not did not treat Plaintiffs different from customers of other races.

### III.   LEGAL STANDARD.

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."   Fed. R. Civ. P. 56(c).   The movant "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact."   *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986) (internal quotation marks omitted).

Where the movant will have the burden of proof on an issue at trial, it must "affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party."   *Soremekun v.*

*Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). With respect to an issue as to which the non-moving party will have the burden of proof, the movant "can prevail merely by pointing out that there is an absence of evidence to support the nonmoving party's case." *Soremekun*, 509 F.3d at 984.

When a motion for summary judgment is properly made and supported, the non-movant cannot defeat the motion by resting upon the allegations or denials of its own pleading, rather the "non-moving party must set forth, by affidavit or as otherwise provided in Rule 56, 'specific facts showing that there is a genuine issue for trial.'" *Soremekun*, 509 F.3d at 984. (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)). "A non-movant's bald assertions or a mere scintilla of evidence in his favor are both insufficient to withstand summary judgment." *FTC v. Stefanchik*, 559 F.3d 924, 929 (9th Cir. 2009). "[A] non-movant must show a genuine issue of material fact by presenting affirmative evidence from which a jury could find in his favor." *Id.* (emphasis in original). "[S]ummary judgment will not lie if [a] dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. In determining whether a genuine dispute exists, a district court does not make credibility determinations; rather, the "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255.

## IV.   DISCUSSION.

As a preliminary matter, Plaintiffs' motion and supporting

11

"evidence" is confusing, conclusory, virtually unintelligible and non-conforming to the Federal Rules of Civil Procedure and the Rules of the United States District Court for the Eastern District of California ("Local Rules").  Plaintiffs filed a handwritten six-page motion/memorandum/statement of "undisputed facts" that neither complies with the rules of evidence and procedure, nor does it identify any *admissible evidence* to support the absence of a genuine dispute of material fact.

To support their claims of racial discrimination and fraud, among others, Plaintiffs submit a number Wal-Mart receipts, boilerplate warranty agreements from Wal-Mart's Tire & Lube Express Department and pictures of a sedan automobile.  The motion has no verified affidavits to support it and no verified foundation for the "exhibits."  Rather, the documents include signatures in the margins under the statement, "I swear under penalty of perjury."  Several other handwritten markings and/or extraneous writings are found on each document/photograph, interspersed with telephone numbers and names of unknown individuals.   It is also entirely unclear *who* took the photographs or *when* they were taken.   Under Federal Rules of Civil Procedure 56(c)(2)-(e) and *Orr v. Bank of America*, 285 F.3d 764 (9th Cir. 2002), the moving party has the burden to set out facts that are admissible in evidence and, if documents are attached to the motion, to identify and authenticate each document via a Rule 56(e) affidavit.  Here, the motion is unclear and does not conform with Fed. R. Civ. P. Rule 56 or the applicable rules of evidence.

Assuming, *arguendo*, that Plaintiffs' motion was properly supported,   there   remains   a   genuine   issue   of   material   fact

concerning whether Defendant violated Plaintiffs' rights under 42 U.S.C. § 1981; subjected Plaintiffs to unlawful intimidation by use of force; committed fraud; or are liable for intentional infliction of emotional distress. In sum, Plaintiffs utterly fail to support their motion with any admissible evidence or apply the law to the purported "facts" of the case.

**A.   42 U.S.C. § 1981 - Claim 1**

Plaintiffs claim Defendant unlawfully threatened violence and refused to honor their contract to purchase tires, in violation of their right to contract under 42 U.S.C. § 1981.

Section 1981 provides:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

42 U.S.C. § 1981(a).

The Supreme Court has "interpreted this language to prohibit racial discrimination by both private parties and state entities in the making and enforcement of contracts." *Pittman v. Oregon, Employment Dept.*, 509 F.3d 1065, 1067 (9th Cir. 2007).

To establish a claim under 42 U.S.C. § 1981, a plaintiff must show that: (1) he or she is a member of a racial minority; (2) defendant had an intent to discriminate on the basis of race; and (3) the discrimination concerned one or more of the activities enumerated in the statute (i.e., the making and enforcing of a contract). *Morris v. Office Max, Inc.*, 89 F.3d 411, 413 (7th Cir.

1996) (citing *Green v. State Bar of Texas*, 27 F.3d 1083, 1086 (5th Cir.1994);  *Mian v. Donaldson, Lifkin & Jenrette Securities Corp.*, 7 F.3d 1085, 1087 (2d Cir. 1993)).

Plaintiffs are members of a protected class,[3] but they do not specifically address or introduce any evidence to establish an intent to discriminate against them on the basis of race, which is fatal to their § 1981 claim.  There is not even *a clear allegation* of such intentional conduct;   the intent element is completely ignored in favor of a four-sentence recitation of "facts":

    1.   Defendant refused to honor contract;

    2.   Our receipt was violently ripped, service refused (treatment extremely and significantly less than white customers);

    3.   We are African Americans;

    4.   Robert Craigo refused to work white workers [sic] to solve issue.

(Doc. 25 at 18-22.)

A 42 U.S.C. § 1981 claim turns on proof that "the defendants acted with intent to discriminate." *Mustafa v. Clark County School Dist.*, 157 F.3d 1169, 1180 (9th Cir. 1998).  Other than the conclusory statement that the service was "significantly less than white customers," Plaintiffs provide no facts or evidence that Wal-Mart employees acted with discriminatory intent or that race was "at-issue," i.e., they identify no white customers or how such customers were treated differently.  *Cf. Gregory v. Dillard's, Inc.*, 565 F.3d 464, 481 (8th Cir. 2009) (stating in the  context of

---

[3] It is undisputed that Plaintiffs are African Americans. Defendants only challenge the second and third elements of  § 1981.

**14**

the second element of a claim under § 1981: "In this case we have not only the testimony of the four summary judgment plaintiffs that they were greeted with hostility and suspicion, but we also have testimony from former employees of Dillard's relevant to establish a custom and practice there of singling out African American shoppers for inferior treatment and intimidation."). The evidence used to support Plaintiffs' § 1981 claim lacks evidentiary foundation and is inadmissible. Since Plaintiffs have the burden to set out facts that are *admissible* in evidence, their failure to do so is fatal to their motion for summary judgment. The fact that they are pro se does not excuse their obligation to follow the law.

Even if, *arguendo*, the intent element were properly alleged and supported, the motion is denied as Defendant has created a genuine issue of material fact as to whether Wal-Mart employees acted with intent to discriminate against Plaintiffs. Particularly, Defendant has submitted substantial evidence in the form of sworn declarations that its employees did not have any discriminatory intent or motivation when they interacted with Plaintiffs. (Docs. 29-36.) The declaration of Leonardo Vargas, a tire technician in Odessa, Texas, is instructive:

> I did not consider the Taylors' race at any time during my interactions with them. I did not treat the Taylors any differently than I treat customers of other races.

(Doc. 30 at ¶ 12.)

Wal-Mart employees Jose Salinas, Andrew Berger, Roberto Craigo, Lauren Holguin, Susan Vargas and James Johnson similarly declare that race was not considered during their interactions with Plaintiffs. If believed, this evidence demonstrates Wal-Mart

**15**

employees did not act with intent to discriminate against Plaintiffs in March 2010.

Since the motion fails under the second element of § 1981, it is unnecessary to discuss whether the discrimination concerned one or more of the activities enumerated in § 1981, i.e., the making and enforcing of a contract.  Plaintiffs only allege that Wal-Mart misrepresented the contract and failed to provide a "free one-time tire balance."  Plaintiffs have produced no evidence to demonstrate that Defendant interfered with their right to make and enforce contracts, all of which is disputed by Defendant.

Plaintiffs' motion for summary judgment on the § 1981 claim is DENIED.

## B.   Bane Act - Unlawful Intimidation by Use of Force - Claim 2

Plaintiffs' Bane Act claim is based on the allegation that Fresno Store Manager Robert Craigo intimidated Plaintiffs into moving their vehicle from the Wal-Mart premises.  It is also alleged that Mr. Craigo threatened to tow Plaintiffs' vehicle from the store.

The Bane Act creates a private cause of action against anyone who:

> interferes by threats, intimidation, or coercion, or attempts to interfere by threats, intimidation, or coercion, with the exercise or enjoyment by any individual or individuals of rights secured by the Constitution or laws of the United States, or of the rights secured by the Constitution or laws of this state.

Cal Civ Code §§ 52.1(a), (b).

The statute has two requirements.  First, plaintiffs must show

16

an attempted or completed act of interference with a legally protected interest; second, plaintiffs must show that the defendant used threats, intimidation or coercion to effect that interference. *See Jones v. Kmart Corp.*, 17 Cal.4th 329, 334 (1998).

Defendant rejoins that Plaintiffs have submitted no evidence of a "legally protected interest" under the Bane Act. Even if, *arguendo*, Plaintiffs identify a legally protected interest and satisfy the remaining elements of the Bane Act, Defendant argues that there is a genuine dispute of material fact based on the sworn declarations submitted by Wal-Mart employees in this case.

The Bane Act claim is dismissed with prejudice because Plaintiffs have conceded that the claim should be dismissed altogether. (See Doc. 37 at 5:17)(stating that "[w]e also request dismiss [sic] of California Bane Act."). Plaintiffs reaffirmed their desire to dismiss the Bane Act claim during oral argument on February 14, 2011.

Based on Plaintiffs' representations in their reply and at oral argument, the Bane Act claim is DISMISSED WITH PREJUDICE.

C.   <u>Fraud - Claim 3</u>

Plaintiffs claim that summary judgment is appropriate as to the fraud claim because Wal-Mart employees "knowingly put a different type of tire on [the] vehicle than the type we purchased." Plaintiffs further argue that they are entitled to summary judgment because Wal-Mart employees "concealed the fact that they did not carry Viva II [tires]" and "[did not] disclose the store's license number."

To determine if the elements of fraud have been pleaded to

17

state a cause of action the Court looks to state law.  *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1126 (9th Cir. 2009).   Under California law, the "elements of fraud are: (1) a misrepresentation (false representation, concealment, or nondisclosure);   (2) knowledge of falsity (or scienter);   (3) intent to defraud, i.e., to induce reliance;   (4) justifiable reliance; and (5) resulting damage."  *Robinson Helicopter Co., Inc. v. Dana Corp.*, 34 Cal.4th 979, 990 (2004).

Plaintiffs have not adequately demonstrated knowledge of falsity, intent to defraud, or resulting damage.  Plaintiffs claim that Wal-Mart employees concealed tire brands and true costs, but have not presented any evidence that the employees knew that any representations were false and made them with the intent to deceive and defraud Plaintiffs.  In addition to a total lack of evidentiary support, Plaintiffs' "theory" does not logically support allegations of knowing, intentional fraud.  A review of the record demonstrates that the Douglas tires were improperly installed in Odessa, Texas, but the mistake was discovered a few hours later by a Wal-Mart employee in Shreveport.   The Shreveport technician explained the oversight to Plaintiffs and suggested they obtain the Viva tires from another Wal-Mart store (because that location did not have any Viva tires in stock).  Plaintiffs did not follow his recommendation.   A similar approach was taken in Fresno, where Plaintiffs were told that the Viva tires could arrive in a week or, alternatively, they could obtain a full refund.  Plaintiffs refused these options.

Even if Plaintiffs met their burden, the Wal-Mart employee declarations create a genuine issue of material fact as to each of

18

the fraud elements.   In particular, the declaration of Leonardo Vargas, the Odessa tire technician, disputes both of Plaintiffs' principal arguments in that he states he inadvertently scanned the wrong serial number in the system and the store number was not concealed:

> I placed Douglas brand tires on the Taylors' vehicle and inadvertently scanned the wrong serial number for the tires into the computer room.   When the work order printed, it incorrectly said that the Taylors received Viva 2 tires.   I did not notice that I accidentally scanned the wrong serial number at the time the Taylors were in the store [...]

> The store information listed in the upper right corner of a service order is computeriz-generated, and may include a greeting in lieu of a license number.   In this case, Wal-Mart Store #0537 chooses to write "GOD BLESS AMERICA" in lieu of a number in the license field of the service order.   The store's license numbers for various licenses necessary for operation are prominently displayed in the store.   I made no attempt to conceal Wal-Mart Store #0537's license numbers from the Taylors.

(Doc. 30 at ¶¶ 6, 10.)

Mr. Vargas' version of events is consistent with the subsequent discovery of the tire oversight by Mr. Johnson and the remedial measures implemented by Wal-Mart employees in Shreveport and Fresno.

There is no evidence, and Plaintiff points to none, that Wal-Mart employees acted with knowledge of falsity and intent to defraud.   After viewing the entirety of the fraud evidence in Defendant's favor, drawing all inferences in its favor, Plaintiff has failed to offer undisputed evidence or allege specific facts to support their Rule 56 burden.   Defendant has created disputed issues of material fact on the fraud claim.

Citing *Weddington Prod., Inc. v. Flick*, 60 Cal. App. 4th 793

19

1  (1998), Defendant argues that the fraud claim is barred under the
2  doctrine of accord and satisfaction.  The elements of an accord and
3  satisfaction are: (1) a bona fide dispute between the parties, (2)
4  the debtor sends a certain sum on the express condition that
5  acceptance of it will constitute full payment, and (3) the creditor
6  so understands the transaction and accepts the sum.  *In re Marriage*
7  *of Thompson,* 41 Cal. App. 4th 1049, 1058 (1996).  Whether a
8  transaction constitutes an accord and satisfaction depends on the
9  intention of the parties as determined from the surrounding
10 circumstances, including the conduct and statements of the parties,
11 and notations on the instrument itself."  *Id*. at 1058-1059.

12      Defendant asserts that the accord and satisfaction factors are
13 satisfied because Plaintiff Corey Taylor cashed a $320.00 check
14 from Defendant's insurer on June 29, 2010.  Claims adjuster Andrew
15 Berger states that the payment resolved Plaintiffs' property damage
16 claim against Wal-Mart.  A review of Mr. Berger's declaration and
17 supporting documents, however, makes clear that there is a lack of
18 proof as to the intent and understanding of the parties to the
19 settlement, namely the terms of the agreement and the ultimate
20 tender of funds.  While Defendant purportedly transmitted a
21 "Release and Settlement Agreement" to Plaintiffs in June 2010, a
22 copy of that document, draft or signed, was not submitted with its
23 opposition or separately introduced in this case.  On the current
24 record, the request to dismiss Plaintiffs' fraud claim pursuant to
25 the doctrine of accord and satisfaction is DENIED WITHOUT
26 PREJUDICE.

27      Plaintiffs' motion for summary judgment on the fraud claim is
28 DENIED.

                              **20**

**D.    Intentional Infliction of Emotional Distress - Claim 4**

Plaintiffs seek summary judgment of their intentional infliction of emotional distress claim alleged under California Law.   Under California law, "the elements of the tort of intentional infliction of emotional distress are:  (1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress;    (2) the plaintiff's suffering severe or extreme emotional distress;  and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct [...]  The defendant must have engaged in 'conduct intended to inflict injury or engaged in with the realization that injury will result.'" *Christensen v. Superior Court*, 54 Cal.3d 868, 903 (1991)(quoting *Davidson v. City of Westminster*, 32 Cal.3d 197, 209-10 (1982)).

Plaintiffs' IIED claim is based on the same facts as their § 1981 and fraud claims, it follows that the IIED cause of action fails for the same reasons set forth above.   Additionally, the record does not support Plaintiffs' contention that they have been subjected to any conduct that "was sufficiently extreme and outrageous to support liability for intentional infliction of emotional distress." *See, e.g., Hill v. County of Sacramento*, No. 2:09-cv-01565-GEB-GGH, 2010 WL 4386664, at 8 (E.D. Cal. Oct. 28, 2010).

Plaintiffs' motion for summary judgment on the IIED claim is DENIED.

**E.    Conclusion**

Plaintiffs' motion for summary judgment is denied as a factual

1  dispute exists on each of the claims for relief.  Plaintiffs are

2  pro se and appear to be unfamiliar with the Federal Rules of

3  Evidence and Civil Procedure, and what constitutes admissible

4  evidence under those rules.  In preparing this case, Plaintiffs

5  must become familiar with the Federal Rules of Evidence, the

6  Federal Rules of Civil Procedure and the Eastern District's Local

7  Rules.[4]

8      As to Rule 56 motions, Plaintiffs are advised to read *Celotex*

9  *Corp. v. Catrett*, 477 U.S. 317 and *FTC v. Stefanchik*, 559 F.3d 924

10  (9th Cir. 2009).  Plaintiffs are cautioned that they bear the

11  burden of proving their allegations and must be prepared to produce

12  evidence in support of those allegations on a dispositive motion.

13  Such evidence may include sworn declarations from the plaintiffs

14  and other witnesses to the events forming the basis for this

15  litigation, and copies of documents authenticated by sworn

16  declaration.  Plaintiff cannot obtain summary judgment simply by

17  repeating the allegations in their complaint and attaching receipts

18  and pictures of their Grand Prix.

19      Plaintiffs are further informed that this Court presides over

20  the heaviest caseload in the nation, with over 1,200 pending

21  criminal and civil cases.

22  ///

23

24      [4] Local Rule of Civil Procedure 56-260(a) provides, in part,
25  that summary judgment motions shall be accompanied by "a statement
    of undisputed facts that shall enumerate discretely each of the
26  specific material facts relied upon in support of the motion."
    E.D. Cal. R. 56-260(a).  That rule also provides that the movant
27  shall "cite the particular portions of any pleading, affidavit,
    deposition, interrogatory answer, admission, or other document
28  relied upon to establish that fact."  *Id*.

**V. <u>CONCLUSION</u>.**

For the reasons stated:

1.   Plaintiffs' Bane Act claim is DISMISSED WITH PREJUDICE;

2.   Plaintiffs' motion for summary judgment on their 42 U.S.C. § 1981, fraud and IIED claims is DENIED.

3.   Defendant's request to dismiss Plaintiffs' fraud claim based on accord and satisfaction is DENIED WITHOUT PREJUDICE.

IT IS SO ORDERED.

**Dated:    February 22, 2011**          /s/ Oliver W. Wanger
                                     UNITED STATES DISTRICT JUDGE

23